```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         WESTERN DIVISION


KARCHEMA PORTER HAYNES and
TIMOTHY GABRIEL HAYNES                                  PLAINTIFFS

VS.                        CIVIL ACTION NO. 5:05-cv-213(DCB)(JMR)

BRINKER INTERNATIONAL, INC.;
DANIEL CLIFTON WHITE, Individually
and as Agent/Representative/Employee
of Brinker International, Inc./
Brinker Restaurant Corporation/
Brinker Mississippi, Inc.;
BRINKER RESTAURANT CORPORATION;
BRINKER MISSISSIPPI, INC.;
GetRV.COM, INC.; COLORADO'S RIDE
THE WEST RV RENTALS, INC.;
WILLIAM J. DAVIS; ANNE S. DAVIS;
and JOHN DOES 1-10                                      DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiffs Karchema Porter Haynes' and Timothy Gabriel Haynes' motion to remand **(docket entry 16)** and for order to show cause **(docket entry 16)**. Having carefully considered the motion and the response by defendants Brinker International, Inc., Brinker Restaurant Corporation, and Brinker Mississippi, Inc., as well as the memoranda of the parties and the applicable case law, the Court finds as follows:

This case involves an automobile accident that occurred on or about September 14, 2005, on Interstate 20 in Vicksburg, Mississippi, involving the plaintiffs' vehicle and a vehicle driven by defendant Clifton White. The plaintiffs filed suit in the Circuit Court of Warren County, Mississippi, and the case was

subsequently removed to this Court.  In their motion to remand, the plaintiffs contend that the defendants have failed to demonstrate that the parties are diverse, and therefore removal to federal court was improper.  Specifically, the plaintiffs maintain that defendants Brinker Restaurant Corporation and Brinker Mississippi, Inc., should be considered citizens of Mississippi for diversity jurisdiction purposes.  It is undisputed that the plaintiffs are resident citizens of Mississippi, and that none of the other defendants is a citizen of Mississippi.

"[A]ny civil action brought in a State court of which the district courts have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the place where such action is pending."  28 U.S.C. § 1441(a).  Diversity jurisdiction under 28 U.S.C. § 1332 requires that the action be between citizens of different states and that the amount in controversy exceed $75,000.  See 28 U.S.C. § 1332.  It is uncontested that the amount in controversy in this case exceeds $75,000.

Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  A corporation may have only one principal place of business for diversity purposes.  See J.S. Olson Co. v. City of Winona, 818 F.2d 401, 406 (5th Cir. 1987).

In their complaint, the plaintiffs allege that defendant Brinker International, Inc., is "a foreign corporation doing business within the State of Mississippi." Complaint, ¶ 4. Defendants Brinker Restaurant Corporation and Brinker Mississippi, Inc., are alleged to be "Mississippi corporation[s] doing business within the State of Mississippi." Complaint, ¶¶ 5-6. In their answer, the Brinker defendants admit that Brinker International, Inc., is a Delaware corporation, but deny that Brinker Restaurant Corporation and Brinker Mississippi, Inc., are Mississippi corporations. Answer, p. 2. The Notice of Removal alleges that all three Brinker defendants are incorporated in the state of Delaware and have their principal place of business at 6820 LBJ Freeway, Dallas, Texas. Notice of Removal, ¶¶ 3, 5-6.

The plaintiffs, in their motion to remand, acknowledge that Brinker Restaurant Corporation and Brinker Mississippi, Inc., are Delaware corporations, but contend that their principal place of business is in Mississippi. Motion to Remand, ¶¶ 4.1-4.3. The plaintiffs request that the Brinker defendants be required to establish that their principal place of business is not in Mississippi before this Court can assume diversity jurisdiction. Motion to Remand, ¶ 4.4.

The plaintiffs are correct in asserting that the Brinker defendants, as removing parties, bear the burden of establishing federal jurisdiction. <u>Massarella v. The Lane Company, Inc.</u>, 298

F.Supp.2d 430, 432 (N.D. Miss. 2003).  The Brinker defendants have
responded to the motion to remand with evidence concerning their
principal place of business, which renders the plaintiffs' request
for an order directing the defendants to "show cause" for the
exercise of diversity jurisdiction moot.  Specifically, the
defendants submit the affidavit of Bryan D. McCrory, the Vice
President, Treasurer and Assistant Secretary of both Brinker
Restaurant Corporation ("BRC") and Brinker Mississippi, Inc.
("BMI").  Discounting McCrory's statement that the principal place
of business for both corporations is in Texas, which opinion is not
the proper subject of an affidavit, the Court considers the
following uncontested facts from the affidavit which are based on
McCrory's personal knowledge and the corporate records, as well as
certain uncontested facts from the defendants' response to the
plaintiffs' motion to remand:

> Brinker International, Inc. ("BII"), is a publicly held
> corporation and owns 100% of the stock of BRC, which owns
> 100% of the stock of BMI.  BMI is one of over 40
> similarly situated subsidiaries of BRC. ...
> Affidavit, ¶ 3.
>
> BII, by itself or through its subsidiaries, owns, leases
> or franchises restaurant properties in 49 states, Central
> and South America, Europe, the Middle East and Asia.
> Affidavit, ¶ 16.
>
> The "concepts" owned by the Brinker entities include
> Chili's Grill and Bar, Romano's Macaroni Grill and On the
> Border Mexican Grill and Cantina Restaurants.
> Response, p. 2.
>
> The Brinker entities are Delaware corporations, and BRC
> and BMI are registered to do business in Mississippi.

Response, p. 2.

BRC, excluding its subsidiaries, owns or leases restaurant properties in 18 states across the nation, none of which are located in Mississippi. Affidavit, ¶ 17.

BMI, one of 40 subsidiaries of BRC, owns or leases ten restaurant properties in Mississippi. Response, p. 2.

The corporate offices of BII, BRC and BMI are located at 6820 LBJ Freeway, in Dallas, Texas. Affidavit, ¶ 4.

All major policy decisions concerning BRC and BMI are made at the corporate headquarters in Dallas, Texas. Affidavit, ¶ 5.

All accounting functions of BRC and BMI are performed at the corporate headquarters in Dallas, Texas. Affidavit, ¶ 6.

Sales information from all restaurants owned by BRC and its subsidiaries, including BMI, is electronically gathered on a nightly basis at the corporate headquarters in Dallas, Texas, where the sales are finalized and redistributed to the individual restaurant properties. Affidavit, ¶ 7.

All issues relating to the purchase and development of properties of both BRC and BMI, are handled at the corporate headquarters in Dallas, Texas. All contracts for the lease of properties for development are also handled in Dallas, Texas. Certain contracts for services are negotiated on a nationwide basis on behalf of all restaurant properties owned or leased by BRC and BMI and are negotiated and signed in Dallas, Texas. Affidavit, ¶ 8.

The officers and directors of BRC and BMI are identical, and all of them reside in the State of Texas. When a Board Meeting is held, the Boards of Directors of BRC and BMI meet in Dallas, Texas. Affidavit, ¶ 9.

All of the corporate records of BRC and BMI are located and are maintained at the corporate headquarters in

5

Dallas, Texas.
Affidavit, ¶ 10.

BRC and BMI file a consolidated federal tax return with
BII, and the consolidated return is prepared in and filed
from Dallas, Texas.
Affidavit, ¶ 11.

Insurance policies for BRC and BMI are purchased by BII,
by the Risk Management Department, through a broker in
Dallas, Texas.
Affidavit, ¶ 12.

BRC and BMI have no employees in the State of
Mississippi.
Affidavit, ¶ 13.

BRC and BMI do not have the authority to hire or fire any
of the staff at the restaurant properties owned by BMI,
in Mississippi.
Affidavit, ¶ 14.

BRC and BMI are staffed through a Management Services
Agreement between BII and a payroll company.  While more
than 100,000 people staff the properties owned or leased
by the Brinker entities, less that 900 people staff the
properties owned or leased by BMI.  In contrast, over
18,000 people staff the properties located in Texas.
Affidavit, ¶ 15.

The Fifth Circuit employs a "total activity" test to determine

a corporation's principal place of business, looking at a

corporation's "nerve center" and its "center of activity."  Olson,

818 F.2d at 411-12.  However,

neither the "nerve center" nor the "place of activity"
test inflexibly dictates the corporation's principal
place of business.  Rather, the tests simply stand for
general rules regarding the determination of a particular
corporation's principal place of business: the principal
place of business of a far-flung corporation will
generally be its nerve center; the principal place of
business of a corporation with significant administrative
authority and activity in one state and lesser executive
offices but principal operations in another state is

6

> generally the district of the former; and the principal
> place of business of a corporation with its corporate
> headquarters in one state and its single activity in
> another will generally be in the state of its operations.
> These rules, however, are applied on a case-by-case
> analysis, weighing the particular facts.  The two tests
> are therefore not mutually exclusive but rather
> complementary.

Id. at 409 (citations and footnote omitted).

In Muirfiled (Delaware), L.P. v. Pitts, Inc., 17 F.Supp.2d 600

(W.D. La. 1998), the district court summarized the factors which

the Fifth Circuit in Olson deemed significant in balancing the

particular facts to determine the principal place of business:

> whether the nature of the business is active or passive,
> labor-intensive or management-demanding; the number of
> locations in which a corporation carries on its business;
> the importance of the activity in question to the
> corporation as a whole; and the extent of local contacts
> the corporation has with the community, including "the
> number of employees in the given locale and the extent to
> which the corporation participates in the community
> through the purchase of products, supplies, supplies and
> services, sales of finished goods, and membership in
> local trade or other organizations."

Id. at 604 (quoting Olson, 818 F.2d at 411-12).  The location of

the corporation's nerve center and "'the exclusivity of decision

making of the nerve center and the degree of autonomy delegated to

other locations'" are also important factors.  Id. (quoting Olson,

818 F.2d at 412).

Defendant BRC, with operations in multiple states, is clearly

a "far-flung" corporation, and its principal place of business is

easily determined by the "nerve center" test.  Its officers all

reside in Texas, all policy decisions are made there, and all

administrative departments are located there.  BRC's corporate headquarters in Dallas is the nerve center from which overall policy originates and radiates out to its constituent parts, and from which its officers direct, control and coordinate its activities in the furtherance of corporate objectives.  The Court therefore finds that BRC's principal place of business is in Texas, and that BRC is a citizen of Texas for diversity purposes.

BMI, on the other hand, operates restaurants only in Mississippi.  There are a number of factors, however, which warrant consideration of both the "nerve center" and "place of activity" tests, rather than the "place of activity" test alone.  First of all, although BMI's principal place of business must be considered separately from that of its parent corporation, it is significant that the officers and directors of BRC and BMI are identical.  Also significant is the fact that BMI's employees are all located in Texas.  BMI has no control over the restaurant employees in Mississippi, who are hired and fired by BII and are subject to the employment decisions and policies of BII.

In <u>Toms v. Country Quality Meats, Inc.</u>, 610 F.2d 313 (5th Cir. 1980), the Fifth Circuit, reviewing a principal place of business ruling by the lower court, found that although a defendant corporation, Country Quality Meats, came into contact with the public in Georgia, where it was engaged in daily activities and had its tangible assets, the activity of the corporation in Texas,

8

where it had its corporate offices, was more significant.  Id. at
315.  Country Quality was part of a system of over 60 similar
corporations created with the help of Brueggemeyer & Wolfe, Inc.
("B&W"), had management-dealership contracts with B&W, and had the
same officers, directors and shareholders.  Id. at 314.  The degree
of control B&W exercised over Country Quality was significant:

> B&W had the power to remove employees from the smaller
> corporation to its own payroll; performed all legal work
> for the sales corporations; formulated some aspects of
> business policy, including furnishing a list of outlets
> from whom the small corporations could buy their meat;
> and had all sales reports, time cards and payroll sheets
> mailed to them. Insurance for the sales corporations was
> carried through an umbrella/blanket policy obtained by
> B&W.  Initial operating capital was obtained at least
> partially through low interest loans from B&W.

Id. at 315.

The degree of control of BMI's Mississippi operations by BRC
and BII is at least as extensive as that of B&W over Country
Quality.  Additionally, with no employees in Mississippi, BMI's
activities and contacts with the public seem to be chiefly in
Texas, not Mississippi.  As the Fifth Circuit found in Toms, "the
activity which occurred in Texas was more significant because
Country Quality was essentially run from there."  Id.

In Harrison v. SF Broadcasting of New Orleans, 1998 WL 355462
(E.D. La.), aff'd 196 F.3d 1256 (5th Cir. 1999), suit was brought
against FOX Broadcasting and SF Broadcasting of New Orleans, a
subsidiary of SF Broadcasting, Inc. ("SFB"), which had its
principal place of business in California.  The district court

began by noting that the principal place of business of SFB-NO should be determined separately from that of its parent corporation.   The court also found that all activities and personnel of SFB-NO were in New Orleans.   However, the district court, like the Fifth Circuit in <u>Toms</u>, refused to narrowly apply the "place of activity" test, and held that California was the principal place of business, since the executive and policy decisions were all made from the California office of the corporation.  <u>Id</u>. at *2.  The court also found it significant that SFB-NO was one of four separate subsidiaries of SFB, and that

> SFB, from its California office, formulates all business
> policy, runs all operational control and accounting
> functions, determines choice of all programing,
> negotiates all property leases, is responsible for all
> capital purchases, makes all personnel decisions,
> purchases and maintains insurance, pays income taxes, and
> handles all corporate reporting requirements for SFB-NO
> and the other subsidiaries.  In addition, daily ledgers,
> accounts receivables, and all profits from SFB-NO and the
> other subsidiaries are sent to SFB in Santa Monica,
> California.  In other words, SFB-NO is "essentially run"
> from Santa Monica, California.

<u>Id</u>. (Citing <u>Toms</u>, 610 F.2d at 315).

Again, the degree of control exercised by SFB over its subsidiary is similar to that exercised by BRC and BII over BMI. Furthermore, the major decisions affecting BMI's activities in Mississippi emanate from one location, in Dallas, Texas.

In <u>Village Fair Shopping Center Co. v. Sam Broadhead Trust</u>, 588 F.2d 431 (5th Cir. 1979), Village Fair, a Delaware corporation qualified to do business in Mississippi, had its corporate office

in New York, but its only asset was a shopping center in
Mississippi, from which it received revenue.  The officers of the
corporation and two of the three shareholders were residents of New
York, and all of the corporation's business decisions were made in
New York.   The Fifth Circuit found the management activities
conducted in New York to be "far more significant [than the fact
that the corporation's asset was located in Mississippi] and ...
thus determinative of the corporation's principal place of
business."  Id. at 434.

Finally, in Kelly Investment, Inc. v. Continental Common
Corp., 2001 WL 686904 (E.D. La. 2001), the Continental defendants
owned, operated and managed property in Louisiana, where they were
registered to do business, but their corporate offices were in
Texas.  In applying the "total activity" test, the court noted:

> The financial affairs of the corporations are directed
> from Texas, and all of the corporate meetings are held in
> Texas.  Checks of the Defendant corporations are written
> in Texas, and contracts on behalf of the Defendant
> corporations are negotiated by persons located in Texas.
> Aside from owning the real estate at issue, the only
> other actual contact that the Continental Defendants have
> with Louisiana is by virtue of the fact that they are
> qualified to do business in the state.  The Defendants do
> not maintain offices, employees, or bank accounts in
> Louisiana.

Id. At *5 (footnotes omitted).  In finding the Continental
defendants' principal place of business to be in Texas, the
district court, as had the Fifth Circuit in Village Fair, found
that owning, operating and managing real estate were "passive"

11

operations, and that "the 'active'/'passive' distinction is a key factor in applying the Fifth Circuit's 'total activity' test." Id. at 6; see also Village Fair, 588 F.2d at 434.

Owning, operating and managing restaurants are arguably "active" activities compared to owning, operating and managing real estate, but in the context of the case before this Court BMI's activities in Mississippi are more "passive" than "active." First of all, the day-to-day management of the restaurants is carried out not by BMI employees but by employees of the parent corporation, BII. Secondly, while BMI employees certainly make decisions affecting operations and management, these decisions are made in Texas, not Mississippi. Finally, many of the decisions affecting management and operations are made not by BMI but by BRC or BII.

Moreover, even if the activities of BMI in Mississippi are considered "active," Toms and Harrison, which deal with "active" operations, meat sales and television broadcasting, respectively, are persuasive authority for finding that BMI's principal place of business is in Texas. After careful consideration of all the factors listed in Olson, and with attention to the particular facts of this case, the Court finds that BMI's principal place of business is in Texas, and that BMI is a citizen of Texas for diversity purposes.

Having found that none of the defendants is a citizen of Mississippi for diversity jurisdiction purposes, the Court finds

12

that this case was properly removed and that the plaintiffs' motion to remand must be denied.  Accordingly,

IT IS HEREBY ORDERED that the plaintiffs Karchema Porter Haynes' and Timothy Gabriel Haynes' motion to remand **(docket entry 16)** is DENIED;

FURTHER ORDERED that the plaintiffs' motion for order to show cause **(docket entry 16)** is DENIED AS MOOT.

SO ORDERED, this the 28th day of September, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE